## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

DR. NAVIN SETHI,

     Plaintiff,

   v.

POTOMAC VALLEY ORTHOPAEDIC
ASSOCIATES, CHARTERED,
CENTERS FOR ADVANCED
ORTHOPAEDICS, LLC,
CHARTER ASC, LLC,
DR. DENIS O'BRIEN,
DR. IRA GELB and
DR. DANIEL TANG,

     Defendants.

Civil Action No. TDC-24-1062

## MEMORANDUM OPINION

Plaintiff Dr. Navin Sethi has filed this civil action against Defendants Potomac Valley Orthopaedic Associates, Chartered ("PVOA"), Centers for Advanced Orthopaedics, LLC ("CAO"), Charter ASC, LLC ("Charter"), Dr. Denis O'Brien, Dr. Ira Gelb, and Dr. Daniel Tang, in which he alleges a race discrimination claim under 42 U.S.C. § 1981, as well as state law claims, arising out of his discharge from the orthopedic medical practices of which he was a member. PVOA and Charter have filed a Motion to Dismiss ("the PVOA Motion"), and CAO, O'Brien, Gelb, and Tang have filed a separate Motion to Dismiss ("the CAO Motion"), both of which are fully briefed. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the PVOA Motion will be GRANTED IN PART and DENIED IN PART, and the CAO Motion will be GRANTED IN PART and DENIED IN PART.

## BACKGROUND

### I.     Sethi and the Defendants

Sethi is an orthopedic surgeon who has practiced in Maryland for over 20 years. He is of Indian heritage and is a practicing Sikh who wears a turban. Sethi began working with PVOA in 2001 and became a full equity partner and shareholder of the practice in 2003. CAO acquired PVOA in 2013, and though PVOA has retained its status as a separate corporate entity, CAO has since operated PVOA as one of its divisions. PVOA is a Maryland corporation, and CAO is a Maryland limited liability company ("LLC").

O'Brien, Gelb, and Tang (collectively, "the Individual Defendants") were also owners and members of CAO and PVOA, and O'Brien served as PVOA's manager. Pursuant to the CAO Amended and Restated Limited Liability Company Operating Agreement ("the CAO Operating Agreement"), Sethi and other partner physicians in the PVOA practice each held one membership unit in CAO, as well as separate units associated with PVOA, their clinical division within CAO. CAO was governed by a Board of Managers, which consisted of members designated by each of the clinical divisions, and O'Brien served as both PVOA's member on the CAO Board of Managers and as a CAO Vice President. Sethi also signed a Professional Services Agreement ("PSA") with CAO and PVOA, which allowed for his "for cause" termination based on certain specified conduct. Compl. ¶ 30. ECF No. 8-1.

Since 2002, Sethi has also been a founding member and owner of Charter, a separate Maryland LLC. As of June 2022, Sethi owned approximately 15 percent of Charter. O'Brien, Gelb, and Tang were also owners and members of Charter, and they comprised the Charter Board of Managers. Charter's Operating Agreement ("the Charter Operating Agreement") authorized

2

the involuntary assignment of a member's ownership rights to the remaining members upon a vote of members holding 75 percent of the ownership interest in Charter.

## II.    The CAO Termination

According to Sethi, as of 2022, he was the most profitable surgeon within PVOA, and he had excellent relationships with the staff and his patients. On June 13, 2022, however, CAO notified Sethi by letter ("the CAO termination letter") that he was being terminated for cause ("the CAO termination"). O'Brien authored the CAO termination letter in his capacity as a CAO Vice President and PVOA's designated member on the CAO Board of Managers. Sethi had received no prior notice of the CAO termination, and he had not been informed by O'Brien, Gelb, or Tang that he was under investigation for possible misconduct or that they were considering terminating him.

The CAO termination letter identified three specific justifications for Sethi's termination for cause: (1) in May 2022, he failed to "promptly execute and deliver" an amendment to his PSA, which had been necessitated by the addition of a new member to the practice, *id.* ¶ 40; (2) he failed to report fees that he charged to a patient for a March 2021 procedure; and (3) during a surgery on January 27, 2022, he improperly left the operating room for a brief period and left a physician assistant ("PA") in charge of the procedure. Under the PSA, which lists 15 specified categories of conduct that could justify termination for cause, for conduct that "does not involve an imminent threat to patient health and safety, Company shall provide notice to Physician of its intent to terminate [the PSA] and Physician shall have a period of thirty (30 days) from the date of such notice to cure such breach to the reasonable satisfaction of the Company, and if not so cured, [the PSA] shall terminate immediately upon expiration of such period." *Id.* ¶ 31. While the CAO termination letter stated that the first basis for termination was curable, it stated that the other two

3

grounds were not curable.  Although the CAO termination letter stated that Sethi's discharge would be effective 30 days later, Sethi's access to company databases and systems was cut off as of the date of the letter, June 13, 2022, and all of his scheduled surgical procedures following that date were canceled without Sethi's input, requiring Sethi's patients either to reschedule their procedures with different surgeons or to delay their surgery dates.

Sethi asserts that the CAO termination was both procedurally and substantively improper. Procedurally, Sethi argues that CAO, PVOA, and the Individual Defendants did not provide him with either 30 days' notice of the CAO termination or an opportunity to cure his alleged breaches of the PSA, as required by the PSA, and that all of the alleged breaches were curable.  He further states that the CAO Operating Agreement required notice of a special meeting before a member could be involuntarily discharged, and that the Individual Defendants failed to issue such a notice prior to Sethi's CAO termination.  Sethi also asserts that the CAO termination was improper because he was not provided with information about any investigation conducted prior to his termination, he was not given the opportunity to respond to the results of any investigation, and there was no meeting of all members to discuss his termination.

Substantively, Sethi disputes the validity of each of the stated reasons for the CAO termination.  As for failing to sign and return the amended version of his PSA, Sethi states that he was in a busy period of surgeries and patient visits at the time of the proposed amendment, that he had not refused to sign the amended PSA, and that nobody had followed up with him to ask if he would sign it.  As for failing to provide an accounting of fees arising out of a March 2021 surgery, Sethi asserts that the procedure was conducted outside of CAO, that he was permitted to retain the fees for medical services provided to patients outside of the practice without reporting the revenue

to CAO, that other PVOA physicians had engaged in the same practice, and that no other PVOA physician had previously been disciplined or terminated for such a practice.

As for leaving a PA in charge of a surgery on January 27, 2022, Sethi asserts that the procedure was urgently rescheduled after it had originally been canceled due to the patient's health complications, that Sethi left the operating room only briefly and had been present for all critical aspects of the procedure, and that not only was Sethi available to return to the operating room, but the procedure was successful and involved no complications or patient complaints. Sethi further argues that Maryland law, applicable agreements, and CAO practices allowed a properly trained and supervised PA to perform a surgical procedure, that it is common practice at CAO for physicians to leave the operating room for some period of time during a surgery, that O'Brien had once used a PA to conduct an entire surgical procedure, and that Tang had previously left an operating room during a more complex procedure performed entirely by a PA, with the knowledge of the CAO President, but that Tang was neither disciplined nor terminated.

Sethi also asserts that CAO, PVOA, and the Individual Defendants improperly refused to pay him compensation earned prior to the CAO termination. Specifically, Sethi claims that he is owed almost $1 million in net income, bonuses, and shares of accounts receivables arising out of his work prior to the CAO termination, that he has not received payment for his full equity interest in the business, and that despite his requests, Defendants have withheld payment.

### III.    The Charter Discharge

On July 5, 2022, approximately three weeks after the CAO termination, Charter involuntarily discharged Sethi as a member through a letter signed by each of the Individual Defendants acting as the Charter Board of Managers. Charter did not provide Sethi with prior notice, a reason for his discharge, or an opportunity to provide information before the discharge.

To entirely remove Sethi from Charter, the Individual Defendants took two steps. First, the Individual Defendants invoked Section 1 of the Charter Operating Agreement, which allows for the "involuntary withdrawal" of a member when, "for any reason and with or without cause," members holding 75 percent of the equity in Charter make a "determination" that "the Interest of a Member shall be purchased by the other Members." *Id.* ¶ 108; Charter Operating Agreement at 3-4, PVOA Mot. Ex. 2, ECF No. 24-4. Second, Gelb, acting on Sethi's behalf pursuant to Section 5.6 of the Charter Operating Agreement, which provides that each member appoints the Charter Board of Managers as the member's "true and lawful attorney-in-fact" in relation to documents required to transfer ownership interests following an involuntary withdrawal of a member from Charter, authorized the assignment of Sethi's shares in Charter, consisting of approximately 15 percent of the company, to its remaining members. Compl. ¶¶ 109, 151; Charter Operating Agreement § 5.6. Though Charter and the Individual Defendants paid Sethi $5,500 for his stake in Charter, Sethi asserts that the fair market value of his ownership stake was substantially higher. According to Sethi, at the time of his expulsion, Charter and the Individual Defendants were exploring a potentially profitable sale of Charter, and in 2023, they reached an agreement for the sale of Charter at a price that would have resulted in a profit of several hundred thousand dollars for Sethi had he retained his interest in Charter.

## IV. Discrimination

Sethi asserts that both the CAO termination and the Charter discharge were based on race and ethnicity discrimination. As evidence of discrimination, Sethi asserts that O'Brien had long been openly cold and confrontational with Sethi, and at least once he had been openly hostile to Sethi, which contrasted with his demeanor towards other PVOA physicians. Sethi also alleges that a South Asian former employee told him that she felt that O'Brien "doesn't like the color of our

skin," Compl. ¶ 37, and that two other non-white employees told Sethi that they perceived discrimination from O'Brien. Sethi also asserts that a partner physician not in Sethi's protected class had engaged in repeated and offensive sexual misconduct from 2008 to 2019, as found by a Maryland State Board of Physicians investigation, and that Defendants had neither disciplined that physician nor terminated him for cause. Sethi alleges that although the physician posed a threat to patient health and safety within the meaning of the PSA, he was terminated only after Sethi's counsel, in relation to this present dispute, pointed to the physician's circumstances as evidence of disparate treatment of Sethi.

## V.    Procedural History

On January 26, 2024, Sethi filed the Complaint in this case in the Circuit Court for Montgomery County, Maryland, in which he alleges five causes of action in the following numbered counts: in Count 1, a claim against all Defendants for discrimination in violation of 42 U.S.C. § 1981, based on the claim that his terminations from CAO, PVOA, and Charter were based on race and ethnicity discrimination; in Count 2, a claim against CAO, PVOA, and Charter for breach of contract, for discharging him from these companies in violation of the PSA, the CAO Operating Agreement, and the Charter Operating Agreement; in Count 3, a claim against the Individual Defendants for breach of fiduciary duty, for discharging Sethi from CAO, PVOA, and Charter, and for acquiring Sethi's shares in Charter, in bad faith and through self-dealing; in Count 4, a claim against the Individual Defendants for a violation of the Maryland General and Limited Power of Attorney Act ("the POA Act"), Md. Code Ann., Est. & Trusts §§ 17–101 to 17–204 (West 2022), based on the allegedly improper use of the power-of-attorney provision in the Charter Operating Agreement to take Sethi's shares in Charter against his will; and in Count 5, a claim against CAO and PVOA, for a violation of the Maryland Wage Payment and Collection Law

("MWPCL"), Md. Code. Ann., Lab. & Empl. §§ 3–501 to 3–509 (West 2016), based on the alleged failure to pay Sethi compensation owed to him at the time of the CAO termination. On April 11, 2024, Defendants removed the case to this Court based on federal question jurisdiction. On June 6, 2024, Defendants collectively filed the two Motions to Dismiss, consisting of the PVOA Motion and the CAO Motion.

## DISCUSSION

In the PVOA Motion and the CAO Motion, Defendants collectively contend that the Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants argue that dismissal of all claims against PVOA is warranted because it was not a party to a contract with Sethi and is no longer an active business. As to the § 1981 claim in Count 1, Defendants argue that Sethi has failed to state a plausible claim because he has not alleged that race or ethnicity was the sole, "but-for" cause of his discharge from CAO, PVOA, and Charter. As to the breach of contract claim in Count 2, Defendants contend that Sethi has failed to identify a specific provision that was breached, that he cannot rely on the implied covenant of good faith and fair dealing, and that the business judgment rule bars his claim. On the breach of fiduciary duty claim in Count 3, Defendants argue that the business judgment rule bars the claim, and Gelb and Tang specifically argue that they did not have a fiduciary duty to Sethi. As for the POA Act claim in Count 4, Defendants assert that Sethi's claim is not statutorily cognizable. Finally, as to the MWPCL claim in Count 5, Defendants argue that Sethi may not recover because he was not an employee as required for relief under the statute.

## I.    Legal Standards

To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S.

8

662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* A court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005).

In resolving a Rule 12(b)(6) motion, courts generally are permitted to consider only the complaint any documents attached to it. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Courts may consider a document attached to a motion to dismiss "when the document is integral to and explicitly relied on in the complaint, and when the plaintiffs do not challenge the document's authenticity." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606-07 (4th Cir. 2015) (quoting *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)). Courts may also consider facts and documents subject to judicial notice. *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013). "Under this exception, courts may consider 'relevant facts obtained from the public record,' so long as these facts are construed in the light most favorable to the plaintiff along with the well-pleaded allegations of the complaint." *Id.* (quoting *B.H. Papasan v. Attain*, 578 U.S. 265, 283 (1986)); *see also* Fed. R. Evid. 201(b) (permitting a court to take judicial notice of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

Defendants have attached various exhibits to the Motions. The exhibits to the PVOA Motion include records relating to the business status of PVOA filed with the Maryland Department of Assessments and Taxation, the Charter Operating Agreement, and the CAO termination letter. The exhibits to the CAO Motion include the CAO Operating Agreement,

Sethi's PSA with CAO, and the CAO termination letter. Where the Complaint relies on and quotes from the CAO Operating Agreement, the PSA, the CAO termination letter, and the Charter Operating Agreement, and Sethi does not challenge the authenticity of those exhibits, the Court may consider them in resolving the Motions because they are integral to and explicitly relied on in the Complaint. Because the records relating to the business status of PVOA come from a Maryland state agency, the Court will take judicial notice of them as part of the public record and construe them in the light most favorable to Sethi.

## II.    PVOA

PVOA argues that it should be dismissed from the case because it was not a party to the PSA. PVOA asserts that it "is a legacy company which has been a corporate shell since 2013, when CAO was formed," and that it "is not owned by CAO." PVOA Mot. at 2 n.1, ECF No. 24-1. Sethi disputes that assertion and argues that he had a contract with both PVOA and CAO, but he acknowledges that "if discovery shows that any party is not properly joined it will be dismissed." Opp'n at 20 n.3, ECF No. 36.

At this stage, the Court will not dismiss PVOA as a defendant on this basis. Throughout the Complaint, Sethi refers to both CAO and PVOA as signatories to the PSA and claims that both entities were jointly responsible for the CAO termination. The Maryland state agency records reflect that PVOA continues to exist as a corporation, the CAO termination letter was printed on letterhead featuring both CAO and PVOA, and O'Brien signed the CAO termination letter on behalf of CAO "acting by and through its Potomac Valley Orthopaedic Associates Division." CAO Termination Letter at 2-3, PVOA Mot. Ex. 3, ECF No. 24-5. Where the record relating to PVOA's corporate status and involvement in the events at issue is incomplete and would benefit from discovery, the Court will not dismiss PVOA at this time.

10

### III.    Section 1981

In Count 1, Sethi alleges a race discrimination claim against all Defendants under 42 U.S.C. § 1981 based on his assertion that his discharges from CAO, PVOA, and Charter were because of discrimination based on his Indian heritage and Sikh faith. In seeking dismissal of this count, Defendants' sole argument is that the Complaint fails to allege a plausible claim because it asserts that the terminations were motivated in part by greed and financial gain, which is incompatible with the requirement that, on a § 1981 claim, discrimination must be a but-for cause of the termination or other adverse action.

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981 (2018). Section 1981 protects against discrimination based on race or ethnicity of the type alleged by Sethi. *See St. Francis College v. Al-Khazraji*, 481 U.S. 604, 613 (1987) ("Based on the history of § 1981, we have little trouble in concluding that Congress intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics."). "To succeed on a § 1981 claim, 'a plaintiff must ultimately establish both that the defendant intended to discriminate on the basis of race, and that the discrimination interfered with a contractual interest.'" *Nadendla v. WakeMed*, 24 F.4th 299, 305 (4th Cir. 2022) (quoting *Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 434 (4th Cir. 2006)). "To prevail, a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020); *Nadendla*, 24 F.4th at 305. In so ruling, *Comcast* rejected the argument that a § 1981 plaintiff need only show that race was a "motivating factor." *Comcast*, 140 S. Ct. at 1014.

Although but-for causation is thus required, the fact that the Complaint asserts more than one reason for Sethi's terminations does not invalidate Sethi's § 1981 claim. In *Comcast*, the Court described the but-for causation requirement applicable under § 1981 to be the "ancient and simple 'but for' common law causation test." *Comcast*, 140 S. Ct. at 1014. Applying this test, the United States Court of Appeals for the Fourth Circuit has held that the plaintiff's "burden is only to show that the protected activity was a but-for cause of [the] termination, not that it was the sole cause." *Guessous v. Fairview Property Investments, LLC*, 828 F.3d 208, 218 (4th Cir. 2016) (applying the test to a claim under Title VII of the Civil Rights Act of 1964). A "cause need not work in isolation to be a but-for cause." *Id.* at 217. Accordingly, the fact that the Complaint alleges that the Individual Defendants, in orchestrating the discharges of Sethi, were also motivated by greed, does not preclude a finding that the terminations still would not have happened but for race discrimination. Therefore, the Court will deny the Motions as to Count 1.

## IV.    Breach of Contract

In Count 2, Sethi alleges a breach of contract claim against CAO, PVOA, and Charter based on his terminations from those entities. In seeking dismissal of this claim, Defendants primarily argue that Sethi has not identified the specific provisions breached by his discharges, that he has not plausibly alleged a violation of the implied covenant of good faith and fair dealing, and that his claim is foreclosed by the business judgment rule.

Under Maryland law, "to state a claim for breach of contract, a plaintiff need only allege the existence of a contractual obligation owed by the defendant to the plaintiff, and a material breach of that obligation by the defendant." *RRC Northeast, LLC v. BAA Md., Inc.*, 994 A.2d 430, 442 (Md. 2010). A contract governed by Maryland law necessarily includes as an implied term a covenant of good faith and fair dealing. *Clancy v. King*, 954 A.2d 1092, 1106 (Md. 2008).

12

"[U]nder the covenant of good faith and fair dealing, a party impliedly promises to refrain from doing anything that will have the effect of injuring or frustrating the right of the other party to receive the fruits of the contract between them." *Id.* at 1109 (quoting *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 184 (4th Cir. 2000)). "Good faith ordinarily is a question of fact," such that "questions involving determinations of good faith which involve intent and motive ordinarily are not resolvable on a motion for summary judgment." *David A. Bramble, Inc. v. Thomas*, 914 A.2d 136, 149 (Md. 2007) (quoting *Rite Aid Corp. v. Hagley*, 824 A.2d 107, 119 (Md. 2003)).

## A.   CAO and PVOA

Sethi has stated a breach of contract claim against CAO and PVOA. Specifically, Sethi alleges that they breached paragraph 11(b) of the PSA, which provides that if a specified event that could justify removal for cause "does not involve an imminent threat to patient health and safety, Company shall provide notice to Physician of its intent to terminate [the PSA] and Physician shall have a period of thirty (30) days from the date of such notice to cure such breach to the reasonable satisfaction of Company, and if not so cured, [the PSA] shall terminate immediately upon expiration of such period." Compl. ¶ 31; PSA ¶ 11(b), CAO Mot. Ex. 2, ECF No. 26-1. Sethi has alleged that CAO and PVOA did not provide him with any notice or opportunity to cure his alleged breaches, even though they were easily curable and did not implicate such a threat to patient health and safety, because they effectively terminated him immediately by cutting off his access to CAO systems and facilities and rescheduling his surgeries with other physicians. He also contends that, as a factual matter, his termination breached the contract because the proffered reasons for removal did not provide valid cause for his termination, including because he was permitted to retain fees arising from a surgical procedure unconnected

13

to CAO, and because briefly leaving an operating room was permissible under Maryland law and CAO practices and did not jeopardize patient health and safety. Where Sethi has identified a specific contractual term in the PSA that he alleged was breached, he has asserted a plausible breach of contract claim relating to CAO and PVOA.

## B. Charter

Sethi has also stated a breach of contract claim arising from his discharge from Charter. Although the Charter Operating Agreement permitted members representing 75 percent of the shares of Charter to remove a member involuntarily even without a specific cause, Sethi alleges that his discharge pursuant to that provision breached the implied covenant of good faith and fair dealing because that authority was exercised in bad faith. In support of this claim, Sethi notes that he was removed without prior notice or any opportunity to respond to concerns from other members. More importantly, Sethi alleges that the discharge involved self-dealing because it resulted in a substantial financial gain to Charter and the Individual Defendants. Specifically, Sethi alleges that as part of the discharge, Sethi's 15 percent interest in Charter was assigned to the other members of Charter, Sethi was paid only $5,500 for that interest, and Charter was then sold at a price that would have resulted in a profit associated with that interest of several hundred thousand dollars. Where Sethi has alleged facts showing that he was discharged without notice or explanation, and that Charter and the Individual Defendants effectively took control of his interest in Charter at a significant financial loss to him and a significant financial gain to them, he has plausibly alleged that his discharge breached the implied covenant of good faith and fair dealing that is present in every Maryland contract because their actions had "the effect of injuring or frustrating the right of the other party to receive the fruits of the contract between them." *Clancy*, 954 A.2d at 1109 (quoting *E. Shore Mkts., Inc.*, 213 F.3d at 184); *cf. Port East Transfer, Inc. v.*

*Liberty Mut. Ins. Co.*, 624 A.2d 520, 524 (Md. 1993) (concluding under Maryland law that where an insurance company "was confronted with potentially conflicting interests" between its interests in increased fees and those of its insured arising out of the value of potential retrospective premium adjustments, the "law will impose an implied promise of good faith," including in "situations in which parties seemingly grant unlimited authority to others to make decisions of vital interest to them, especially where the decision-maker has a potential conflict of interest"). Accordingly, Sethi has also stated a claim for breach of contract against Charter.

Defendants' reference to the business judgment rule does not alter this conclusion. The business judgment rule, codified by statute in Maryland, provides that a director of a corporation cannot be held personally liable for actions taken in good faith, in a manner that the director "reasonably believes to be in the best interests of the corporation," and with "the care that an ordinarily prudent person in a like position would use under similar circumstances." *See* Md. Code Ann., Corps. & Ass'ns § 2–405.1(c), (e) (West 2014). A director is presumed to act consistent with these standards. *Id.* § 2–405.1(g). The rule is typically applied in shareholder derivative actions. *See Boland v. Boland*, 31 A.3d, 529, 548 (Md. 2011) (holding that in such an action, "if the majority of the [corporation's] board properly exercises its business judgment, the directors are ordinarily not liable" (quoting *Devereux v. Berger*, 284 A.2d 605, 612 (Md. 1971))); *Pinsky v. Pikesville Recreation Council*, 78 A.3d 471, 492 n.42 (Md. Ct. Spec. App. 2013). The business judgment rule, however, "has never precluded full litigation of complaints sounding in tort or contract against a corporation." *Sadler v. Dimensions Healthcare Corp.*, 836 A.2d 655, 668 (Md. 2003). Moreover, while Defendants assert that *Sadler* references only potential liability to "third parties," *id.*, the business judgment rule does not preclude actions by an employee for breach of an employment contract. *Pinsky*, 78 A.3d at 492 n.42. The case law relied upon by Defendants that

15

addresses employment or personnel contracts does not actually reference the business judgment rule. *See Towson Univ. v. Conte*, 862 A.3d 941, 950 (Md. 2004) (applying employment law principles in holding that a jury should not be permitted to "scrutinize the factual bases for the decision to terminate"); *Levin v. Sinai Hosp. of Baltimore*, 46 A.2d 298, 300-01 (Md. 1946) (deciding whether a private hospital board had authority to terminate medical staff members without using the business judgment rule). To permit the business judgment rule to provide a defense to a breach of contract claim would lead to the "absurd result" that a company official could intentionally breach a term of a contract so long as the breach was in the best interest of the company. *See Advanced Training Grp. v. Proactive Techs. Inc.*, No. 19-CV-505, 2020 WL 4574493, at *12 (E.D. Va. Aug. 7, 2020) (rejecting such an argument).

Although this concern is less relevant on the issue of the alleged breach of the implied covenant of good faith and fair dealing, which underlies the breach of contract claim relating to Charter, any application of the business judgment rule to support dismissal of that aspect of Sethi's breach of contract claim fails because "[t]he protection of the business judgment rule 'can be claimed only by disinterested directors whose conduct otherwise meets the tests of business judgment.'" *Boland*, 31 A.3d at 549 (quoting *Werbowsky v. Collomb*, 766 A.2d 123, 138 (Md. 2001)). "[T]his means that directors can neither appear on both sides of a transaction nor expect to derive any personal financial benefit from it." *Werbowsky v. Collomb*, 766 A.2d 123, 138 (Md. 2001). Sethi alleges that the Individual Defendants seized his ownership interest in Charter for a payment far below its fair market value, and that they then sought to sell Charter for a large profit from which Sethi would be excluded. Sethi has thus alleged sufficient facts that, accepted as true, plausibly show that the Individual Defendants derived a personal financial benefit such that they are not "disinterested directors," which would preclude any application of the business judgment

rule. *Boland*, 31 A.3d at 549; *see also Eastland Food Corp. v. Mekhaya*, 301 A.3d 308, 316, 329 (Md. 2023) (holding that where a group of company directors forced out one director, excluded him from sharing the company's profits, and allowed the other directors to receive more profits and excessive compensation, the facts were sufficient to overcome the business judgment rule).

For all of these reasons, the Court will deny the Motions as to the breach of contract claim in Count 2.

## V.    Breach of Fiduciary Duty

In Count 3, Sethi alleges a breach of fiduciary duty claim against the Individual Defendants based on his terminations from CAO, PVOA, and Charter. The Individual Defendants seek dismissal of this claim on the grounds that the business judgment rule shields them from liability, and that Gelb and Tang owed no fiduciary duty to Sethi because they were not managing members of CAO.

"To establish a breach of fiduciary duty as an independent cause of action, a plaintiff must show: '(i) the existence of a fiduciary relationship; (ii) breach of the duty owed by the fiduciary to the beneficiary; and (iii) harm to the beneficiary.'" *Plank v. Cherneski*, 231 A.3d 436, 466 (Md. 2020) (quoting *Froelich v. Erickson*, 96 F. Supp. 2d 507, 526 (D. Md. 2000)). "[M]anaging members of an LLC owe common law fiduciary duties . . . to the other members." *Id.* at 450.

Sethi has stated a breach of fiduciary duty claim against O'Brien. Sethi alleges, and Defendants do not dispute, that O'Brien was a member of the CAO Board of Managers and owed a fiduciary duty to Sethi. The Complaint alleges that O'Brien acted in bad faith, against Sethi's interests, and in a self-dealing manner by discharging Sethi from CAO and PVOA for discriminatory reasons, and by discharging Sethi from Charter, taking control of his ownership interest for below market rate compensation, and then selling Charter for a significant profit on

17

Sethi's share. Such conduct fairly states a claim that O'Brien breached fiduciary duties of loyalty and to avoid self-dealing. Sethi also alleges that he suffered financial harm as a result. Accordingly, Sethi has stated a claim against O'Brien for breach of fiduciary duty. *See id.* at 466.

Although these same factual allegations also apply to Gelb and Tang, Defendants argue that the breach of fiduciary duty claim against those defendants should be dismissed because, as non-managing members of CAO, they did not owe any fiduciary duty to Sethi. *Plank* held that a managing member of an LLC has a fiduciary duty to the other members, but it did not address whether non-managing LLC members have a fiduciary duty to each other. *Id.* at 450. Neither party has identified controlling authority on this issue. Several courts, however, have found that non-managing LLC members owe fiduciary duties to each other. *See, e.g., Xereas v. Heiss*, 987 F.3d 1124, 1131-32 (D.C. Cir. 2021) (holding that members of a member-managed LLC owed each other fiduciary duties and noting that case law suggested that "an action for breach of fiduciary duty may lie between members of an LLC based on their status as members alone" (citing *Calomiris v. Calomiris*, 3 A.3d 1186, 1194-95 (D.C. 2010))); *Bushi v. Sage Health Care, PLLC*, 203 P.3d 694, 699 (Idaho 2009) ("It appears that the majority of courts considering the issue have concluded that members of an LLC owe one another fiduciary duties"). Where the issue is not settled, dismissal at this stage under Rule 12(b)(6) is disfavored. *See Wright v. North Carolina*, 787 F.3d 256, 263 (4th Cir. 2015) (stating that dismissals "are especially disfavored in cases where the complaint sets forth a novel legal theory that can best be assessed after factual development"). The Court therefore will not dismiss the breach of fiduciary duty claims against Gelb and Tang on the grounds that they were not managing members of CAO.

Defendants' other arguments do not provide a basis for dismissal. Although Defendants contend that Gelb and Tang could not owe fiduciary duties to Sethi because they were not CAO's

agents, Defendants have not attached the relevant portion of the CAO Operating Agreement that supposedly supports this claim. Even if the CAO Operating Agreement so provided, "there is no 'one-size fits all' breach of fiduciary [duty] tort that encompasses all types of [fiduciary] relationships" because "fiduciary relationships . . . can have different characteristics" and are not necessarily limited to "agents and principals" but can also include other relationships such as "the relationship among partners." *Plank*, 231 A.3d at 465-66.

Although Defendants also argue that the business judgment rule warrants dismissal of Count 3, they have cited no authority supporting dismissal on this basis at this stage, as the cases applying the business judgment rule cited by Defendants relate to shareholder derivative actions or company mergers, which are not at issue in this case. Even assuming its applicability outside those contexts, the business judgment rule does not warrant dismissal at this stage because, as discussed above, Sethi has alleged sufficient facts to show that the Individual Defendants were not disinterested directors. *See supra* part IV.

Finally, the Court notes that Defendants have not made any arguments regarding whether Gelb and Tang owed fiduciary duties to Sethi in their capacity as members of the Charter Board of Managers, so Sethi has also stated a claim for breach of fiduciary duty against Gelb and Tang based on their actions in discharging Sethi from Charter, taking over his ownership shares for below market-rate compensation, and selling Charter for a considerable profit.

For all of these reasons, the Court will deny the Motions as to the breach of fiduciary duty claims in Count 3.

## VI.    POA Act

In Count 4, Sethi alleges a claim under the Maryland Power of Attorney Act against the Individual Defendants based on their use of the power-of-attorney provision in the Charter

Operating Agreement to deprive him of his ownership interest. The Individual Defendants seek dismissal of Count 4 on the grounds that the POA Act exempts their conduct from statutory liability.

"Broadly defined, a power of attorney is a written document by which one party, as principal, appoints another as agent (attorney in fact) and confers upon the latter the authority to perform certain specified acts or kinds of acts on behalf of the principal." *King v. Bankerd*, 492 A.2d 608, 611 (Md. 1985). The POA Act allows a principal to "petition a court to construe a power of attorney or review the agent's conduct, and grant appropriate relief." Md. Code Ann., Est. & Trusts § 17–103(a)(1). Though the POA Act generally "applies to all powers of attorney," *id.* § 17–109(a), it does not apply to a "proxy or other delegation to exercise any right with respect to an entity, including voting rights or management rights or both, or a delegation of authority to execute, become a party to, or amend a document or agreement governing an entity or entity ownership interest," *id.* § 17–109(b)(3).

In the POA Act claim, Sethi alleges that Gelb and the other Individual Defendants improperly effectuated the assignment of all of his ownership and membership rights in Charter to Charter's remaining members. To do so, Gelb used the provision of the Charter Operating Agreement entitled "Power of Attorney" through which each member had agreed to appoint Charter's Board of Managers as the member's "true and lawful attorney-in-fact" and granted it the authority to "make, execute, sign, acknowledge, and file . . . all documents required to transfer a Withdrawal Interest pursuant to Section 6.2.1.3 of" the Charter Operating Agreement. Charter Operating Agreement § 5.6.1.6. Section 6.2.1.3, in turn, allowed either Charter or its remaining members to require a member subject to an involuntary withdrawal to execute documents necessary to transfer the member's ownership interest to Charter or its remaining members in

20

exchange for a specified Withdrawal Purchase Price. Thus, the power-of-attorney provision in the Charter Operating Agreement was one that permitted "a delegation of authority to execute, become a party to, or amend a document or agreement governing an entity or entity ownership interest," Md. Code Ann., Est. & Trusts § 17–109(b)(3), specifically a member's ownership interest in Charter. Because the POA Act's protections do not extend to the relevant power-of-attorney provision in the Charter Operating Agreement, Count 4 will be dismissed.

## VII.   MWPCL

In Count 5, Sethi alleges a claim under the MWPCL against CAO and PVOA based on their alleged refusal to pay him compensation earned before his termination from CAO and PVOA. Defendants seek dismissal of this count on the grounds that none of them are Sethi's "employer," and Sethi is not an "employee" of any Defendant, as required to establish liability under the MWPCL. Sethi states that Count 5 is pleaded in the alternative to Count 3 "to the extent that the economic realities of [Sethi's] relationship are more akin to that of an employee than a true owner." Compl. ¶ 160.

The MWPCL provides that "each employer shall pay an employee . . . all wages due for work that the employee performed before the termination of employment." Md. Code Ann., Lab. & Empl. § 3–505(a). To determine whether a defendant is a plaintiff's "employer" under the MWPCL, courts apply the "economic reality test," which considers "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Campusano v. Lusitano Const.,* LLC, 56 A.3d 303, 309 (Md. Ct. of Spec. App. 2012) (quoting *Newell v. Runnels*, 967 A.2d 729, 772 (Md. 2009)); *see Pinnacle Grp., LLC v. Kelly*, 178 A.3d 581, 603 (Md. Ct. Spec. App. 2018).

Based on the allegations in the Complaint, all four factors weigh against concluding that CAO or PVOA were Sethi's employer under the MWPCL. First, where Sethi could be terminated only through a supermajority vote of the PVOA division partners, and no supervisor or other individual had the unilateral authority to terminate him, the first factor weighs against concluding that CAO or PVOA was Sethi's "employer." *See Lemon v. Myers Bigel, P.A.*, 985 F.3d 392, 397-98 (4th Cir. 2021) (holding that a law firm partner was not an "employee" in part because she could only be terminated by a board vote). Second, Sethi does not allege that CAO or PVOA supervised or controlled his work schedule or conditions of employment before his termination. Though Sethi alleges that Defendants canceled his patient appointments, barred him from the premises, and revoked his access to electronic systems, those actions occurred only after Sethi's termination and not during the regular course of his work. Sethi has cited no authority that would allow the Court to consider such post-termination events in determining whether an employer-employee relationship existed before termination. Therefore, the second factor also weighs against Sethi.

Third, individuals with an ownership stake in the company who are compensated based on the company's profits and losses instead of receiving a set wage are unlikely to be considered employees. *See id.* at 397; *Bluestein v. Cent. Wis. Anesthesiology, S.C.*, 769 F.3d 944, 956 (7th Cir. 2014) (concluding that an anesthesiologist who "shared equally in the firm's profits and liabilities" was not an employee of the practice). In the Complaint, Sethi asserts that he was a "full equity partner/shareholder" and that each partner held one membership unit in CAO and separate units associated with the PVOA clinical division. Compl. ¶¶ 10, 13. As Sethi has not alleged that he received a set wage from CAO or PVOA, the third factor also weighs against finding that CAO or PVOA was his employer. Finally, the Complaint does not allege any facts regarding the

22

maintenance of Sethi's employment records.    Where none of the factors support the conclusion that CAO or PVOA was Sethi's employer and that he was an employee, even accepting that the MWPCL claim was pleaded in the alternative, the Complaint fails to provide sufficient facts to support a plausible MWPCL claim.  Accordingly, Count 5 will be dismissed.

## CONCLUSION

For the foregoing reasons, the PVOA Motion to Dismiss will be GRANTED IN PART and DENIED IN PART, in that the Motion will be granted as to Count 5 but will be otherwise denied. The CAO Motion to Dismiss will be GRANTED IN PART and DENIED IN PART, in that the Motion will be granted as to Counts 4 and 5 but will be otherwise denied.  A separate Order shall issue.

Date:   July 31, 2024

THEODORE D. CHUANG
United States District Judge

23